**Richard HODGES d/b/a
Custom Tours, Inc.**

v.

**WSM, INC., Grand Ole Opry Tours,
Inc., and Opryland USA, Inc.**

No. 3-90-1101.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 10, 1992.

Richard James Braun, Nashville, TN, for plaintiff.

Robert Dale Grimes, Bass, Berry & Sims, Nashville, TN, for defendants.

### *MEMORANDUM*

ECHOLS, District Judge.

This antitrust case comes before the Court for review of the Magistrate Judge's Report and Recommendation ("R & R") and the Plaintiff's objections thereto. Pursuant to an Order of this Court under the provisions of 28 U.S.C. § 636(b)(1)(A), (B) and (C), and Rules 302 and 303, L.R.M.P., the Defendants' Motion to Dismiss, as well as other pretrial matters, were referred to the Magistrate Judge on March 22, 1991, for review and recommendation. On March 28, 1992, the Magistrate Judge issued an R & R which recommended that the Defendants' Motion to Dismiss be granted. The Plaintiff then filed a timely objection. Having reviewed the entire record de novo pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b), Fed. R.Civ.P., the Magistrate Judge's R & R is ADOPTED, and the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), Fed. R.Civ.P., is GRANTED for the reasons set forth below.

### I. Facts

The Plaintiff, Richard Hodges d/b/a Custom Tours, Inc.,[1] filed this antitrust action under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) seeking money damages and injunctive relief for the Defendants' alleged violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

Beginning in December of 1986 and continuing until sometime in 1990, the Plaintiff was engaged in the business of operating a shuttle transportation service between the Nashville International Airport and hotels located in Davidson County, Tennessee. The Defendant, WSM, Inc., owns Grand Ole Opry Tours, Inc. and Opryland USA, Inc. Opryland USA, Inc. operates the Opryland Hotel and Convention Center along with its own shuttle transportation service between its hotel and the airport.

In the Amended Complaint, the Plaintiff alleges that beginning in 1987, the Defendants engaged in an illegal horizontal market division conspiracy in restraint of interstate trade with certain airport shuttle companies in violation of Section 1 of the Sherman Act. This conspiracy consisted of an agreement by the co-conspirator shuttle service companies to refrain from transporting passengers between the airport and the Opryland facilities. Defendants rewarded compliance with this agreement by leasing vans and buses from the co-conspirators for its own shuttle service. Allegedly, the Defendants policed this agreement by ensuring that no shuttle service company, other than their own, was permitted to shuttle passengers between the airport and the Opryland facilities. Plaintiff further alleges that the Defendants denied Custom Tours, Inc. access to the Opryland facilities, thus depriving the Plaintiff of the opportunity to compete in the airport shuttle market. Plaintiff alleges that it lost sales and was weakened economically due to the deprivation of its opportunity to compete effectively in the airport shuttle transportation market. Plaintiff also contends that interstate travelers arriving at the airport have been deprived of the benefits of open competition between the Plaintiff and other shuttle service companies.

The Magistrate Judge recommended that the Defendants' Motion to Dismiss be granted because Plaintiff's Amended Complaint failed to state a claim under Section 1 of the Sherman Act because the injury claimed by the Plaintiff does not constitute an "antitrust injury." The Magistrate Judge relied upon *Axis, S.p.A. v. Micafil, Inc.,* 870 F.2d 1105 (6th Cir.1989), *cert. denied* 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989), in which the Sixth Circuit affirmed the dismissal of an

---

1. Custom Tours, Inc., has now been administratively dissolved by the State of Tennessee. It filed for Chapter 11 bankruptcy in June of 1989, and the petition was voluntarily dismissed in December of 1989.

antitrust complaint that failed to allege antitrust injury. In *Axis,* a European equipment manufacturer, which was not involved in the U.S. market due to the presence of blocking patents held by four American manufacturers, brought suit challenging a European competitor's acquisition of two of the American firms. While assuming that the plaintiff had established an antitrust violation based on a foreclosure of the U.S. market because of the acquisition, the court held that the plaintiff had not suffered an antitrust injury because the plaintiff's injury—loss of sales due to the denial of entry into the U.S. market—was caused by the blocking patents, not the illegal acquisition. *Id.* at 1112. The court found that the plaintiff would have sustained the same injury even absent the defendant's alleged violation of the antitrust laws. Therefore, the plaintiff's injury did not flow from the alleged antitrust violation. *Id.*

▪ In this case, the Magistrate Judge reasoned that the Plaintiff's alleged injury was not caused by decreased competition resulting from the alleged conspiracy, but rather was directly caused by Opryland's refusal to permit Custom Tours access to its private property. Thus, since the Plaintiff would have suffered the same injury regardless of the existence of the purported conspiracy, the Plaintiff did not suffer an antitrust injury. The Magistrate Judge concluded that such unilateral action on the part of the Defendants was not a violation of the federal antitrust laws.

In his objections to the Magistrate Judge's R & R, Plaintiff first contends that the Magistrate Judge misread the allegations of the Amended Complaint. Plaintiff asserts that the Amended Complaint does not allege that he was injured by Defendants' overt act of excluding Plaintiff from their property, but rather that it was injured as the result of a conspiracy to allocate destinations to and from the airport. Plaintiff's arguments in this regard are simply a reiteration of the conclusory statements contained in his amended complaint. In *Axis,* the Plaintiff also alleged that it was injured by a loss of sales and profits which resulted from the alleged unlawful acquisition and concomitant decrease in competition. However, in *Axis,*

the court found that a close reading of the complaint showed that the injury flowed from the lawful patents blocking entry into the U.S. market. Plaintiff's injury, in this case, was caused by the lawful refusal of Opryland to permit the Plaintiff to enter its property, not by Plaintiff's participation in an alleged illegal market division conspiracy. Therefore, just as in *Axis,* the Plaintiff has not suffered antitrust injury because he would have suffered the same injury—lost sales from not being allowed to transport passengers to and from the airport and Opryland—had there been no alleged conspiracy to "allocate" the airport shuttle service market.

Second, Plaintiff objects to the Magistrate Judge's reliance on *Axis* because it is distinguishable from the facts in this case. The restraint to the Plaintiff in *Axis* was a lawful patent monopoly, whereas in this case the Defendants' exclusion of the Plaintiff from their property was unlawful in that such action violated Tenn.Code Ann. § 62–7–111(a). This section provides:

(a) It is unlawful for owners, proprietors, lessees, keepers, agents, employees or servants of any theaters, shows, parks, places of public resort for observation of scenery, or amusement of any kind whatever, where a fee or toll is charged for admission into such places or premises, to refuse admission to any person on account of the fact that such person travels to and from such parks or places over a particular route, or in the vehicles, or other means of conveyance of any person rather than another. It is the duty of all such owners, proprietors, lessees, or keepers of such public places to admit all well behaved persons thereto upon equal terms, without regard to such particular route or means of conveyance.

However, this statute is not determinative of the issue before the Court. Although the statute makes it unlawful for "parks, places of public resort ... or amusement ... to refuse admission to any person on account of the fact that such person travels to and from such parks or places ... in the vehicles, or other means of conveyance of any person rather than another," there are no allegations that Opryland "refused admission" to

any of Plaintiff's passengers. Plaintiff alleges that its vehicles were excluded from entering the Opryland complex, but Plaintiff was free to transport passengers from the airport up to the Opryland property line and its passengers would not be refused admission to the property.

■ Even if the Court assumes that Defendants violated Tenn.Code Ann. § 62–7–111(a) when it excluded the Plaintiff from its premises, such a violation would not be enough to establish an "antitrust injury." An antitrust injury is an injury of the type the antitrust laws were designed to prevent and which flows from that which makes the defendants' acts unlawful. Defendants' activities must have had an adverse effect on competition, and the injury suffered by the Plaintiff must be causally connected to Defendants' violation of the antitrust laws. *Axis*, at 1108 (*citing Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427 (1986); *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977)); *see also Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). In this case, the Magistrate Judge correctly concluded that the Plaintiff's injury did not flow from any decrease in competition among the allegedly conspiring shuttle operators, rather it flowed from the Defendants' act of refusing to allow the Plaintiff on their private property. The alleged conspiracy did not prevent Plaintiff from operating a shuttle service from the airport to Opryland. In fact, if the conspiracy existed, it would have benefited Plaintiff by reducing its competition to shuttle passengers from the airport to Opryland. It was Opryland's refusal to allow Plaintiff's vans on its property which caused Plaintiff's injury. If Plaintiff would have suffered the same injury without regard to the allegedly anti-competitive acts of Defendants, Plaintiff has not suffered an antitrust injury. Plaintiff's injury is not causally connected to an antitrust violation because the act of barring the Plaintiff from the Opryland premises does not violate the federal antitrust laws, even assuming that the defendants' actions violated the Tennessee anti-discrimination law.

■ Finally, Plaintiff argues that the Magistrate Judge erred in finding that it did not have standing to sue without first considering the factors articulated by the Sixth Circuit in *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079 (6th Cir.1983) to determine the standing of an antitrust plaintiff. *See also Bodie–Rickett and Assoc. v. Mars, Inc.*, 957 F.2d 287 (6th Cir.1992). However, the factors set forth in the *Southaven* case and its progeny dealt with the broader issue of antitrust "standing." "Antitrust injury" is a concept that is distinct from the concept of antitrust standing, although it is a component of an antitrust standing analysis. *Axis*, at 1108 (*citing Cargill*, 479 U.S. at 110 n. 5, 107 S.Ct. at 489 n. 5). Before the Plaintiff may assert his claim under Section 1 of the Sherman Act, he must meet the threshold requirement of alleging facts which establish "antitrust injury." *See Cargill*, at 110, 107 S.Ct. at 489.

As the Plaintiff has failed to allege an antitrust injury in this case, the Magistrate Judge's R & R is ADOPTED and the Defendants' Motion to Dismiss is hereby GRANTED.